IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH MONTI,                                    6:12-cv-01864-MA

               Plaintiff,                OPINION AND ORDER

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

              Defendant.


KATHRYN TASSINARI
ROBERT A. BARON
Harder, Wells, Baron & Manning, P.C.
404 Willamette, Suite 200
Eugene, Oregon 97401

     Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

DAPHNE BANAY
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

     Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff, Joseph Monti, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for child's insurance benefits (CIB) based on disability under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I reverse the final decision of the Commissioner and remand for further proceedings consistent with this opinion.

### PROCEDURAL BACKGROUND

Plaintiff protectively filed his applications for SSI and CIB on June 5, 2009, and July 6, 2009, respectively, alleging disability due to "nerve damage" to the left foot caused by a gunshot wound to the back, post-traumatic stress disorder (PTSD), a history of bipolar disorder, schizophrenia, and attention deficit hyperactivity disorder (ADHD). Tr. 214. His applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on February 8, 2012, at which Plaintiff was represented by counsel and testified. Vocational Expert (VE) Mark McGowan was also present throughout the hearing and testified.

On February 24, 2012, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. After the Appeals Council declined review of the ALJ's decision, Plaintiff timely filed a complaint in this Court.

## FACTUAL BACKGROUND

Born on November 8, 1989, Plaintiff was 16 years old on the alleged onset date of disability and 22 years old on the date of the hearing. Plaintiff has an 11th grade education, but has not completed his high school equivalency and has no past relevant work. Tr. 29.

Plaintiff alleges his conditions became disabling on February 23, 2006. Tr. 209. Plaintiff testified about his limitations at the hearing and submitted an Adult Function Report and Pain and Fatigue Questionnaire. Tr. 40-67, 230-38. Plaintiff's friend, Kathleen Clemskelton, submitted a Third Party Function Report. Tr. 222-29. Plaintiff's mother submitted multiple letters on Plaintiff's behalf. Kurt Brewster, M.D., examined Plaintiff and submitted an evaluative opinion as to Plaintiff's physical limitations. Tr. 505-14. Judith Eckstein, Ph.D., examined Plaintiff and submitted an evaluative opinion as to Plaintiff's psychological limitations. Tr. 517-22. Robert Henry, Ph.D., and Linda L. Jensen, M.D., reviewed Plaintiff's records and submitted reviewing opinions concerning Plaintiff's mental and physical limitations, respectively. Finally, the record contains a chart

3 - OPINION AND ORDER

note from Jerry Boggs, M.D., Plaintiff's treating neurologist, that Plaintiff argues is entitled to consideration as a medical opinion. Tr. 634-36.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that Plaintiff had not attained age 22 on the alleged date of disability or engaged in substantial gainful activity since the alleged onset date, February 23, 2006. See 20 C.F.R. §§ 404.102, 404.350(a)(5), 404.1571 et seq., 416.120(c)(4), 416.971 et seq.; Tr. 23.

At Step Two, the ALJ found that Plaintiff's "[s]tatus post gunshot wound in the back," ADHD, learning disorder, mathematics disorder, dysthymia, and cannabis dependence were severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 23.

4 - OPINION AND ORDER

At Step Three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 23.

The ALJ found Plaintiff has the residual functional capacity (RFC) to perform sedentary work, except that Plaintiff is further limited to occasional climbing of ramps and stairs; occasional balancing and crawling; no climbing ladders, ropes, and scaffolds; no exposure to hazards such as dangerous machinery and unprotected heights; only occasional contact with the general public; and "entry level simple routine tasks." Tr. 25-29.

At Step Four, the ALJ found Plaintiff has no past relevant work. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 29.

At Step Five, however, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform, including Polisher of Eyeglass Frames and Escort Vehicle Driver. See 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a; Tr. 29-30.

Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises four issues on appeal. First, Plaintiff argues the ALJ improperly rejected his testimony. Second, Plaintiff maintains that the ALJ failed to properly evaluate the record from Dr. Boggs. Third, Plaintiff asserts the ALJ improperly

rejected Dr. Eckstein's opinion.  Finally, Plaintiff argues the ALJ erred in his consideration of Plaintiff's limitations at Step Five.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u>  The Court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld.  <u>Andrews</u>, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

I.  **Plaintiff's Testimony**

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis.  20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an

underlying impairment that could reasonably be expected to produce the symptoms alleged. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear, and convincing reasons for doing so. <u>Id.</u> at 1281.

If an ALJ finds the claimant's testimony regarding his subjective symptoms unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." <u>Morgan v. Comm'r Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify which testimony is credible and which testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, Plaintiff testified he has a number of physical and mental conditions that stem from being the victim of a shooting at school at the age of 16. Plaintiff testified that he has trouble "being around people" and "walking outside." Tr. 42. Plaintiff identified these psychological problems as the primary reason he cannot work. Tr. 53.

As to his physical conditions as a result of the shooting, Plaintiff testified it caused a back injury and nerve damage that radiates into his leg, preventing him from running or bending in certain ways. Tr. 47. On some days, especially when the weather is cold, Plaintiff reported he suffers significant back pain. Tr. 47-48. Plaintiff testified that he can sit for one to two hours before having to stand and that he can stand for two to three hours before significant back pain sets in. Tr. 49. Plaintiff testified he engages in household activities that do not require bending and can be accomplished in a relatively brief period of time. Tr. 50.

In addition to the effects of the shooting, Plaintiff testified he suffers from longstanding learning and behavioral problems. Plaintiff stated that he had significant anger problems in his childhood, but noted his anger has "mellowed out a lot since [he] was young." Tr. 45. Plaintiff noted, however, still being defiant with supervisors. Tr. 45. Plaintiff testified he continues to have difficulty with both mathematics and vocabulary, and finds he lacks motivation. Tr. 44, 46, 55.

As for medical treatment, Plaintiff testified that he has a medical marijuana card as prescribed by Dr. Boggs and that it helps with both his chronic pain and appetite. Tr. 51. Plaintiff reported he prefers to use medical marijuana because he does not want to use prescription pain medication and does not want to undergo treatment that involves injections in his back. Tr. 51-52.

8 - OPINION AND ORDER

Accordingly, Plaintiff reported smoking marijuana in the morning and at night. Tr. 51.

In his Adult Function Report, Plaintiff indicated his typical routine is to wake up, walk to try to ease his back pain, and then help his friends around the house in exchange for his friends providing him a place to live. Tr. 230. Plaintiff reported that his back pain causes difficulty putting on socks, but that he is capable of cooking and cleaning so long as his back does not hurt. Tr. 231-32. Plaintiff reported that he is able to go outside every day and goes to stores to shop for food and clothes. Tr. 233. Plaintiff checked that his conditions affect his abilities to lift, squat, bend, stand, walk, sit, kneel, hear, complete tasks, concentrate, understand, and get along with others. Tr. 235. Plaintiff reported he can lift up to 40 pounds, but that lifting or sitting too long hurts his back, and that he can walk "quite a bit" before needing to stop and rest. Tr. 235. As to his mental limitations, Plaintiff noted he can pay attention "most of the time," can follow both written and spoken instructions, and is "respectful to all authority." Tr. 235-36.

The ALJ rejected Plaintiff's testimony because Plaintiff failed to seek medical treatment for his allegedly disabling conditions for an extended period, pursued a conservative course of treatment with medical marijuana while foregoing more aggressive treatment, and because the recent medical record is inconsistent

9 - OPINION AND ORDER

with present disabling limitations.    I conclude these reasons, taken together, constitute clear and convincing reasons to reject Plaintiff's testimony.

The ALJ's citation to Plaintiff's failure to seek medical treatment is a compelling reason to reject his testimony of disabling limitations.  An ALJ may discredit a claimant's testimony on the basis of an inadequately explained failure to seek medical treatment.  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995); Zerba v. Comm'r Soc. Sec. Admin., 279 Fed. App'x 438, 439-40 (9th Cir. 2008).  While the medical record is understandably substantial for approximately one year following the shooting incident, aside from the examination records from Drs. Brewster and Eckstein, the medical record is devoid of evidence from February of 2007 until November of 2010.  Tr. 503, 574.  This gap in the medical record is especially significant because it covers the majority of the period between the alleged onset date in February of 2006 and the hearing in February of 2012.  Aside from significant records concerning behavioral and emotional problems in Plaintiff's childhood before the alleged onset date, the only record of Plaintiff seeking mental health treatment is a therapy record on February 7, 2012, the day before the hearing, in which Plaintiff is first establishing mental health treatment.  Tr. 637.  Plaintiff's explanation for this failure to seek treatment at the hearing – that he has been unable to find transportation to appointments - does not explain a failure

to seek mental health treatment until the day before the hearing or the more than three-and-a-half year gap in the medical record concerning his physical conditions. <u>See</u> Tr. 42.

In addition, the ALJ's citation to Plaintiff's conservative course of treatment using medical marijuana with respect to his back pain and nerve damage is a compelling reason to reject Plaintiff's testimony of significant limitations caused by his physical conditions. An inadequately explained conservative course of medical treatment is a proper reason to reject a claimant's testimony of debilitating pain. <u>Carmickle v. Comm'r Soc. Sec. Admin.</u>, 533 F.3d 1155, 1162 (9th Cir. 2008). Indeed, in his June 22, 2011 consultation with Dr. Boggs, Plaintiff declined the use of prescription pain medication to control his chronic pain in favor of utilizing medical marijuana. Tr. 636. In addition, as Plaintiff admitted at the hearing, Plaintiff turned down injections to relieve his back pain because he did not want to endure the procedure. Tr. 52. Thus, the ALJ's conclusion that Plaintiff's physical conditions are not as disabling as alleged because his pain was sufficiently controlled by his use of medical marijuana is reasonable.

Finally, the ALJ reasonably discredited Plaintiff's testimony because the recent medical record does not support the existence of present disabling limitations. Indeed, while Dr. Boggs noted Plaintiff demonstrated "overt evidence of muscle atrophy" and

neurological defects in his lower left leg which caused some changes to his gait and which are expected to be irreversible and permanent, Dr. Boggs also found that Plaintiff's "function in daily life is quite reasonable," but that Plaintiff could not "do vigorous physical activities, such as running, or even participate in a very strenuous occupation that requires use of the lower limbs." Tr. 636. Similarly, Dr. Brewster, the examining physician who evaluated Plaintiff's physical capabilities, found Plaintiff was capable of generally light work despite his pain, neurological deficits, and muscle atrophy. Tr. 513. Finally, the ALJ reasonably noted that the most recent available mental health records, albeit still quite dated, suggested Plaintiff's academic, emotional, and behavioral problems were improving even after the shooting incident. Tr. 250, 265.

Thus, the ALJ reasonably found that Plaintiff's most recent medical records did not support Plaintiff's allegations of disabling impairments which, especially in light of the very sparse recent medical record, is a convincing reason to discredit Plaintiff's testimony of disabling limitations. In sum, I conclude the above reasons, taken together, constitute clear and convincing reasons to discredit Plaintiff's testimony.

## II.  Dr. Boggs' Record

Plaintiff argues that the ALJ erred in his consideration of the record from Dr. Boggs because the ALJ did not provide at least

specific and legitimate reasons for rejecting Dr. Boggs' opinion and failed to include Dr. Boggs' diagnosis of a pain syndrome at Step Two. Plaintiff was referred to Dr. Boggs, a neurologist, for a consultation concerning Plaintiff's muscle atrophy and neurological problems in his left leg. Dr. Boggs did not submit a specific opinion for purposes of the disability determination. Instead, the record contains a chart note from Plaintiff's appointment with Dr. Boggs. Tr. 634-36. As noted above, Dr. Boggs found Plaintiff demonstrated muscle atrophy in his lower left leg, sensory defects primarily in his left leg, and chronic pain as a result of his gunshot wounds. Tr. 636. Dr. Boggs noted, however, that Plaintiff's function in daily living was "quite reasonable," although he could not participate in "vigorous physical activities" or a "very strenuous occupation." Tr. 636.

As an initial matter, the record from Dr. Boggs only questionably meets the criteria for what is considered an "opinion" entitled to individual discussion, as opposed to one entry among a larger medical record from which the ALJ must derive substantial evidence for the decision. See 20 C.F.R. § 404.1527(a)(2). Notably, Dr. Boggs' record appears to be a treatment record, not a statement submitted to aid the disability determination by reflecting Dr. Boggs' medical judgments about Plaintiff's functional capacity.

13 - OPINION AND ORDER

In any event, assuming Dr. Boggs' record constitutes an "opinion," nothing in Dr. Boggs' opinion is inconsistent with the RFC. Ultimately, the ALJ limited Plaintiff to a range of sedentary work that readily accommodates Dr. Boggs' opinion that Plaintiff could not participate in "vigorous physical activities" or a "very strenuous occupation." In addition, any error in not including the "pain syndrome" noted by Dr. Boggs at Step Two is harmless because the ALJ included "[s]tatus post gunshot wound in back" as a more general condition, extensively considered the effects of Plaintiff's gunshot wounds in the RFC, and ultimately found significant limitations caused thereby in the final RFC determination. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (holding that an erroneous failure to list a condition at Step Two is harmless where the ALJ considers the limitations associated with that condition in the RFC). Thus, even characterized as an opinion, the ALJ's treatment of Dr. Boggs' record does not constitute harmful error.

## III. **Dr. Eckstein's Opinion**

Plaintiff next argues the ALJ erred in his consideration of Dr. Eckstein's evaluative opinion. Dr. Eckstein conducted an intellectual assessment in which she found Plaintiff had IQ scores in the fifth percentile. Accordingly, Dr. Eckstein found Plaintiff would "have difficulty in formal education settings, particularly with his mathematical disability and slow processing speed." Tr.

519.  In addition, Dr. Eckstein noted Plaintiff "shows difficulty with perceptual organization and lacks an understanding of basic societal norms and customs." Tr. 519.  Dr. Eckstein further found Plaintiff "appears to have attentional difficulties with both hyperactive and inattentive components." Tr. 519.

The ALJ gave Dr. Eckstein's opinion "some weight, to the extent it is specific about [Plaintiff's] limitations based on mental impairments," and stated the RFC findings were consistent with Dr. Eckstein's opinion.  Plaintiff argues the ALJ failed to account for the difficulties noted by Dr. Eckstein and, even if the ALJ properly implied Dr. Eckstein's opinion lacked specificity, the ALJ failed to further develop the record to resolve the ambiguity. I agree that the ALJ erred by failing to further develop the record in light of Dr. Eckstein's ambiguous opinion.

An ALJ has a "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288).  "This duty extends to the represented as well as to the unrepresented claimant," but is especially strong where the claimant was not represented by counsel.  Id.  The duty attaches when there is "[a]mbiguous evidence," or the ALJ finds "that the record is inadequate to allow for proper evaluation of the evidence."  Id.

In this instance, as the ALJ suggested in his opinion, Dr. Eckstein's opinion is ambiguous. Specifically, Dr. Eckstein's opinion is vague as to the extent of many of Plaintiff's limitations and the effect such limitations have on Plaintiff's ability to function in the workplace. Therefore, I conclude the ALJ had a duty to further develop the record as to Plaintiff's mental limitations that was especially important in light of the lack of contemporaneous evidence concerning Plaintiff's mental impairments. The ALJ did not fulfill this duty, thereby necessitating remand.[1]

## IV. Remand

After finding the ALJ erred, this Court has discretion to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). Where, however, "the record has been developed fully and further administrative proceedings would serve no useful purpose," a remand for an award of benefits is appropriate. Id.

It is well settled that a court will:

---

[1] Because I conclude the ALJ erred in his consideration of Plaintiff's mental impairments as found in Dr. Eckstein's opinion, I need not address Plaintiff's Step Five argument.

> [C]redit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. (citing Harman, 211 F.3d at 1178). Nonetheless, "[a] claimant is not entitled to benefits . . . unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." Strauss v. Comm'r Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011). Thus, a remand for further proceedings is generally appropriate unless, in light of the ALJ's errors, it is clear from the record that the claimant is disabled within the meaning of the Act. See id.

Here, further proceedings are necessary because the record requires additional development as to Plaintiff's mental impairments. The ALJ shall either seek a more specific opinion from Dr. Eckstein or order a new mental evaluation from a different examining medical source. In addition, the ALJ shall permit Plaintiff to submit any additional records of mental health treatment received since the date of the hearing. The ALJ shall explain how the RFC findings made on remand are consistent with any new evidence obtained. Because this remand is specific to obtaining further evidence concerning Plaintiff's mental limitations, the ALJ need not reconsider Plaintiff's RFC with respect to his physical limitations.

17 - OPINION AND ORDER

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this *28* day of April, 2014.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

18 - OPINION AND ORDER